UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KARAMJIT SINGH (A-Number: 241-077-094),<br><br>                    Petitioner,<br><br>          v.<br><br>WARDEN, *et al.*,<br><br>                    Respondents. | Case No.  1:26-cv-2050-TLN-JDP<br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner Karamjit Singh entered the United States in 2024 and was re-detained by ICE in 2025.  Petitioner seeks a writ of habeas corpus under 28 U.S.C. § 2241, arguing that his re-detention without a bond hearing violates the Fifth Amendment.  For the following reasons, I recommend that the petition be granted and that petitioner be afforded a bond hearing.

**Background**

On August 16, 2024, petitioner entered the United States, was briefly detained by immigration officials, and then was paroled into the United States.  ECF No. 9-1 at 2.  There is no evidence or allegation indicating that petitioner has failed to comply with the conditions of his parole.  After being released, petitioner applied for asylum.  ECF No. 1 ¶ 61.

On August 21, 2025, petitioner was arrested and charged with assault with a deadly

1

weapon in violation of California Penal Code § 245(a)(1).[1]  ECF No. 9-2 at 5.  That charge remains pending.

On November 20, 2025, petitioner reported to the ICE Sacramento office for a scheduled appointment, when "[u]pon reviewing [his] criminal history record, it was discovered that [he] was arrested" three months prior.  ECF No. 9-1 at 2.  Because the arrest violated petitioner's conditions of release, petitioner was re-detained at his appointment.  *Id*.  Since his re-detention, petitioner has not been afforded a bond hearing.  ECF No. 1 ¶¶ 4-5.

**Procedural History**

On March 14, 2026, petitioner filed a petition for writ of habeas corpus.  ECF No. 1.  That same day, petitioner also filed a motion for temporary restraining order that requested respondents be enjoined from transferring him outside of this District while this action is pending.  ECF No. 2.  On April 2, 2026, the court granted petitioner's motion for temporary restraining order, restrained respondents from transferring petitioner outside of this District during the pendency of this action, and referred the matter to me for further proceedings.  ECF No. 7.  On April 10, 2026, respondents filed an answer to the petition.  ECF No. 9.  The petition and answer are deemed submitted.  *See* ECF No. 8 at 2.

**Legal Standard**

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law.  28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have

---

[1] Respondents do not assert that petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c).  ECF No. 9 at 1 n.1.

been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  A district court's habeas jurisdiction includes challenges to immigration detention.  *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**Analysis**

Petitioner claims that his re-detention without a bond hearing violates the Fifth Amendment.[2]  ECF No. 1 ¶¶ 69-79.  Notably, respondents offer little response to petitioner's due process claim.  Instead, they primarily respond to petitioner's statutory claim and advance an argument premised on the assertion that petitioner is an "applicant for admission" within the meaning of 8 U.S.C. § 1225(a) and that he is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A).  ECF No. 9 at 1-2.  Respondents concede, however, that this action "mirrors the issues in numerous cases decided by this Court and most of the Courts in the Eastern District of California, finding the government's legal position to be incorrect and the alien's detention unlawful."  *See id.* at 2.  Respondents do not explain what, if any, binding precedent supports their statutory position.  More fundamentally, respondents' focus is misplaced because their only response to petitioner's due process claim is through the lens of their statutory argument.[3]  *See id.* at 3.

Courts analyze procedural due process claims in two steps: first, we consider whether there exists a protected liberty interest under the Due Process Clause, and, second, we evaluate what procedures are necessary to ensure that any deprivation of that protected liberty interest

---

[2] Because the petition should be granted on the basis of this due process claim alone, I find it unnecessary to address petitioner's other claims, which are brought under the Immigration and Nationality Act and the Administrative Procedure Act.  *See* ECF No. 1 ¶¶ 80-92.

[3] Even if petitioner were subject to mandatory detention under section 1225(b)—a legal position rejected by many courts throughout the nation—respondents do not cite any authority supporting their argument that petitioner would therefore lack due process rights regarding his re-detention.  *See* ECF No. 9 at 3.  The cases respondents cite address the "entry fiction," which is a legal doctrine providing that "although aliens seeking admission into the United States may physically be allowed within its borders pending a determination of admissibility, such aliens are legally considered to be detained at the border and hence as never having effected entry into this country."  *Aguilera-Montero v. Mukasey*, 548 F.3d 1248, 1253 (9th Cir. 2008) (citation omitted).  However, the Court of Appeals held that while the entry fiction is "determinative of the *procedural* rights of aliens with respect to their applications for admission," it has not "been applied, by the Supreme Court or by this court, to deny all constitutional rights to non-admitted aliens."  *Wong v. United States*, 373 F.3d 952, 971 (9th Cir. 2004).

accords with the Constitution. *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). I consider each in turn.

To determine whether a specific conditional release rises to the level of a protected liberty interest, courts have compared "specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey* [*v. Brewer*, 408 U.S. 471 (1971)]." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted). In *Morrissey*, the Supreme Court explained that parole from a criminal conviction "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." 408 U.S. at 482. The court observed that while "the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, the petitioner's "condition is very different from that of confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted). Therefore, in *Morrissey*, the Supreme Court found that a parolee in a criminal case possessed a protected interest in "continued liberty." *Id.* at 481-84.

Recently, confronted with questions similar to those raised by petitioner, courts in this Circuit have found that noncitizens released from ICE custody acquire a liberty interest in their continued release. *See, e.g.*, *Labrador-Prato v. Noem*, No. 1:25-cv-1598-DC-SCR, 2025 WL 3458802, at *5 (E.D. Cal. Dec. 2, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *Rico-Tapia v. Smith*, No. 1:25-cv-00379-SASPKJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) and *Morrissey v. Brewer*, 408 U.S. 471, 481-82 (1972)); *Shoimov v. Chestnut*, No. 1:25-cv-1603-CSK, 2026 WL 35624, at *5 (E.D. Cal. Jan. 6, 2026). I agree with the bulk of other courts to have considered the issues presented here and find that petitioner has a protected liberty interest in his continued release.

4

Immigration officials released petitioner on parole in August 2024.  ECF No. 9-1 at 2. Since his release, petitioner has lived in the United States, subject to ICE supervision but outside of custody, for fifteen months.  Petitioner thereby formed "enduring attachments of normal life." *See Morrissey*, 408 U.S. at 482.  I conclude that petitioner's initial release and time out of custody have created a constitutionally protected liberty interest in continued release.  *See Guillermo M. R. v. Kaiser*, No. 25-cv-5436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-5259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding released noncitizens to have strong liberty interests).

Once a court has found that a noncitizen has a liberty interest in continued release, the court must next determine what procedural protections the government must afford the noncitizen before depriving him of that liberty interest.  This requires balancing the factors laid out in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

The *Mathews* test requires courts to consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

First, petitioner has a significant private interest in his continued release.  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Petitioner has a private interest in continued release that developed over the fifteen months between his release and his re-detention.  *See Noori v. LaRose*, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *10 (S.D. Cal. Oct. 1, 2025) ("Petitioner has a private interest in remaining free, which developed over the year he resided in the United States.").

Turning to the second *Mathews* factor, the risk of erroneous deprivation without a bond hearing is high. Prior to releasing petitioner, immigration officers necessarily determined that he presented neither a danger to the community nor a risk of flight. *See Pinchi*, 792 F. Supp. 3d at 1034 (explaining that a petitioner's "release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community"). Absent a pre-deprivation bond hearing in front of a neutral arbiter, the risk of erroneous deprivation is high given the possibility that petitioner's re-detention will not be pursuant to a valid state interest. *See Omer G. G. v. Kaiser*, No. 1:25-cv-01471-KES-SAB, 2025 WL 3254999, at *7 (E.D. Cal. Nov. 22, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community.") (quoting *Zadvydas*, 533 U.S. at 690).

"Where, as here, '[the petitioner] has not received any bond or custody . . . hearing,' 'the risk of an erroneous deprivation [of liberty] is high' because neither the government nor [the petitioner] has had an opportunity to determine whether there is any valid basis for her detention." *Pinchi*, 792 F. Supp. 3d at 1035 (quoting *Singh v. Andrews*, No. 1:25-cv-00801, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025)). Respondents offer no evidence or argument indicating that any procedural safeguards have been employed following petitioner's re-detention; more generally, they give the court no reason to believe that any efforts have been made to prevent erroneous deprivation of petitioner's liberty. *See id*. On the contrary, the fact that the government still maintains that petitioner is subject to mandatory detention indicates that it has not taken sufficient efforts to prevent erroneous deprivation of petitioner's liberty. Accordingly, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *See A.E. v. Andrews*, No. 1:25-cv-0107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025), *report and recommendation adopted*, 2025 WL 1808676 (E.D. Cal. July 1, 2025).

"Third, the Government's interest in detaining Petitioner without . . . a hearing is 'low.'" *Salazar v. Casey*, No. 25-cv-2784-JLS, 2025 WL 3063629, at *5 (S.D. Cal. Nov. 3, 2025) (citation omitted). "In immigration court, custody hearings are routine and impose a 'minimal' cost." *Carballo v. Andrews*, No. 1:25-cv-0978-KES-EPG, 2025 WL 2381464, at *8 (E.D. Cal.

6

Aug. 15, 2025) (quoting *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)). Respondents have not provided any information about the additional burden that would fall on them as a result of being required to provide a bond hearing. *See* ECF No. 9.

Accordingly, a consideration of the *Mathews* factors demonstrates that petitioner's ongoing re-detention without a bond hearing violates his due process rights. Given this finding, I must determine the appropriate remedy. Petitioner seeks immediate release or, alternatively, a bond hearing. ECF No. 1 at 16. Respondents argue that "the remedy should be a bond hearing for any purported due process violation." ECF No. 9 at 3.

The Supreme Court has recognized that "[h]abeas is at its core a remedy for unlawful executive detention" and the "typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). The Court has also observed, however, that "release need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008). "Indeed, common-law habeas corpus was, above all, an adaptable remedy. Its precise application and scope changed depending upon the circumstances." *Id.*; *see also Carafas v. LaVallee*, 391 U.S. 234, 239 (1968) (The federal habeas statute "does not limit the relief that may be granted to discharge of the applicant from physical custody").

Before re-detaining petitioner, due process would ordinarily require a pre-deprivation hearing. *See Zinermon v. Burch*, 494 U.S. 113, 127 (1990) ("[T]he [Supreme] Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property."). However, "there may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate." *Guillermo M.R. v. Kaiser*, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025). For example, in *Martinez Hernandez v. Andrews*, the court held that, where the petitioner had allegedly violated his parole, a post-deprivation hearing was appropriate because it was "at least arguable that providing [the petitioner] with notice and a pre-deprivation hearing would have been impracticable and/or would have motivated his flight." No. 1:25-cv-1035-JLT-HBK, 2025 WL 2495767, at *12 (E.D. Cal. Aug. 28, 2025).

Here, ICE re-detained petitioner approximately three months after he was arrested and

charged.  *See* ECF No. 9-1 at 2.  ICE records indicate that immigration officers learned about petitioner's arrest and associated charge when they reviewed petitioner's criminal history record during his appointment where he was re-detained.  *See id.* ("Upon reviewing Singh's criminal record, it was discovered that Singh was arrested . . . .").  There is no evidence showing that ICE learned about petitioner's arrest before the appointment, or that petitioner had any contact with ICE between his arrest and re-detention.  In the absence of evidence to the contrary, I find that it is "at least arguable that providing [petitioner] with notice and a pre-deprivation hearing would have been impracticable and/or would have motivated his flight."  *See Martinez Hernandez v. Andrews*, 2025 WL 2495767, at *12.  Accordingly, the present record does not establish that petitioner was constitutionally entitled to a pre-deprivation hearing.[4]

Due process still required, however, that petitioner be afforded a "prompt post-deprivation hearing."  *See Guillermo M.R.*, 791 F. Supp. 3d at 1036.  Petitioner, as noted, has not been afforded such a hearing.  Accordingly, I find that the appropriate remedy is a bond hearing.  *See Archundia v. Wofford*, No. 1:26-cv-1452-DJC-CSK, 2026 WL 607977, at *2 (E.D. Cal. Mar. 4, 2026) (finding a bond hearing to be the proper remedy where petitioner was previously arrested for "allegedly engaging in prostitution") (citing *J.S.H.M. v. Wofford*, No. 1:25-cv-1309-JLT-SKO, 2025 WL 2938808, at *15-16 (E.D. Cal. Oct. 16, 2025)).

### Conclusion

Based on the foregoing, I recommend that petitioner's writ of habeas corpus be granted.

Accordingly, it is hereby RECOMMENDED that:

1. The petition for writ of habeas corpus, ECF No. 1, be GRANTED.

2. Petitioner (A-Number: 241-077-094) be provided a bond hearing within seven days of the date of the court's order.  At this hearing, the government shall bear the burden of establishing, by clear and convincing evidence, that petitioner poses a danger to the community or

---

[4] While the court held in *Guillermo M.R.* that a six-week period between the petitioner's arrest and re-detention demonstrated a "lack of urgency," the instant action is readily distinguishable; there, ICE learned of the petitioner's arrest the day after he was arrested, interviewed the petitioner soon thereafter, and then waited an additional five weeks to re-detain him.  *See* 791 F. Supp. 3d at 1028, 1036.  Here, on the contrary, there is no evidence that would support a finding that ICE did not act with urgency.

8

a risk of flight, and petitioner shall be allowed to have counsel present.

3. Respondents be ordered to file a status report, within five days of the bond hearing, confirming that the hearing occurred.

4. The Clerk of Court be ordered to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within seven days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within seven days of service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:    April 23, 2026

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE